IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**REGINALD JONES,**

         **Plaintiff,**

v.

**SANDRA QUICK, and**
**FRANK LAWRENCE,**

         **Defendants.**

**Case No. 3:19-cv-01281-NJR**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Reginal Jones filed this *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his First Amendment rights while he was incarcerated at Menard Correctional Center ("Menard"). This matter is now before the Court on Defendants' Motion for Summary Judgment on the Issue of Failure to Exhaust Administrative Remedies (Doc. 58). For the reasons set forth below, the motion is granted.

### BACKGROUND

Jones makes the following allegations in his Complaint (Doc. 6). Jones assaulted a staff member at Pinckneyville Correctional Center ("Pinckneyville") on July 15, 2019. He was then restrained by a number of officers, pepper sprayed, and handcuffed. An officer sat on Jones's back and tightened the handcuffs. The tightened handcuffs caused lacerations on his wrists, and the lacerations burned from the pepper spray.

After the assault, Jones was transferred to Menard. Upon his arrival, he was assaulted by numerous staff members. Jones received a grievance form from Counselor

Quick on August 7, 2019, and he submitted a grievance regarding the staff assault five days later. He submitted it as an emergency grievance to Warden Lawrence, who denied emergency review. Jones then submitted the grievance to Counselor Quick.

Jones sent Counselor Quick a request for additional grievance forms on August 18, 2019. Counselor Quick replied that Jones would be put on a list for more forms. He never received them. He submitted another letter to Counselor Quick for grievance forms and money vouchers on August 25, 2019, because his deadline for submitting a grievance on the use of excessive force at Pinckneyville was approaching. He did not receive a response. Because Counselor Quick did not provide him with grievance forms, Jones was forced to submit his grievance to the Administrative Review Board ("ARB") on regular paper. The ARB did not acknowledge receipt of his grievances. He informed Warden Lawrence of Counselor Quick's failure to provide grievance forms, but Lawrence did not respond.

Jones alleges that Counselor Quick's actions were in retaliation for filing his grievance about the staff assault at Menard. Since submitting that grievance to Counselor Quick, he has been unable to obtain additional grievance forms.

Following a threshold review of the Complaint under 28 U.S.C. § 1915A, Jones was permitted to proceed on the following claim:

> Count 2:   Quick and Lawrence retaliated against Jones by failing to provide him with grievance forms in violation of the First Amendment.

Subsequently, Defendants Quick and Lawrence filed a motion for summary judgment asserting Jones failed to properly exhaust his administrative remedies prior to

filing this action (Doc. 58). Jones filed a response (Doc. 63) and subsequently requested leave to supplement his response (Docs. 64, 66), which was granted (Docs. 65, 67). The Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) on February 3, 2021 (Doc. 103). Jones testified via video from Menard Correctional Center. (*Id.*). Defendants appeared by counsel and offered the testimony of Kelly Pierce, a grievance officer at Menard (*Id.*)

Defendants contend Jones failed to exhaust his administrative remedies prior to filing suit because he did not submit any grievance raising allegations of retaliation by Counselor Quick and Warden Lawrence. Jones claims he was unable to exhaust his administrative remedies because Counselor Quick and Warden Lawrence denied his requests for grievance forms. He also claims only outdated, invalid grievance forms were available at Menard rendering the grievance process unavailable.

## FACTS

### A. Grievance records

According to the Menard grievance records, Jones submitted only one grievance at the facility level between the dates of July 15, 2019 (the date he was transferred to Menard) and December 13, 2019 (the date Jones filed this lawsuit)—Grievance #162-8-19. That grievance raises allegations of the staff assault Jones claims occurred upon his arrival at Menard on July 15, 2019. Counselor Quick responded to the grievance on August 29, 2019. A grievance officer reviewed the grievance on April 23, 2020[1] and recommended

---

[1] The grievance officer's review occurred after this case was filed.

the grievance be denied based on an investigation into the merits of the allegations. The Chief Administrative Officer ("CAO") concurred on April 30, 2020.

### B. *Pavey hearing testimony*

Jones testified that after he submitted Grievance #162-8-19, Counselor Quick and Warden Lawrence ignored his requests for grievance forms. He wrote a letter to Counselor Quick requesting three grievance forms on August 18, 2019. She responded the next day through institutional mail and replied that she would put him on the list for forms, but he did not receive the forms. He wrote letters to Counselor Quick and Warden Lawrence on August 25, 2019, requesting grievance forms. He also wrote to the ARB the next day about his inability to obtain grievance forms. Subsequently, he submitted a grievance on regular paper to the ARB about the Pinckneyville assault.

Jones testified that it was his understanding that he could only obtain grievance forms from his counselor. Despite receiving grievance forms from Counselor Quick when she toured his gallery on August 7, 2019,[2] Jones testified that he did not request grievance forms from Quick when she visited him on September 5, October 3, November 5, or December 4, 2019. He indicated that it was outside the 60-day period of time to file a grievance about the Pinckneyville assault.

Jones conceded that he had been given a copy of the Orientation Manual which states grievance forms are available in the housing units upon request. Because he was in

---

[2] Counselor Quick gave Jones two grievance forms. He used both forms for Grievance #162-8-19—one form to submit the grievance and one form to make a handwritten copy because he had been unable to have a copy made in the library.

an isolation cell in segregation, however, he could not just walk to the sergeant's office and request the forms. Further, because he was at Menard due to a staff assault, he testified it was an atypical situation, and the usual rules and procedures on paper do not apply in practice. Jones also testified it is "asinine" to believe that prison staff would be willing to bring him grievance forms to file against their co-workers that tried to kill him. But he did receive revised grievance forms from a correctional officer when he requested them in January 2020, which he held and used to file grievances for incidents in March 2020 and July 2020.

When questioned about whether he requested grievance forms after the August 2019 letters, Jones testified that it was his understanding that he only had to request grievance forms three times before filing suit. He believes his letters to Counselor Quick, Warden Lawrence, and the ARB in August 2019 satisfied that requirement.

Jones testified that the forms Counselor Quick gave him on August 7, 2019, were outdated. He believes that because the form had been revised, it was "superseded," rending it invalid and inexhaustible. According to him, the "superseded" form denies the right to appeal because the ARB does not have to honor prior versions of the grievance form, only the most recent version.

Kelly Pierce, a grievance officer at Menard, provided testimony on behalf of Defendants. She testified that grievance forms are available in all housing units by request and that information is provided in the Orientation Manual, which Jones was provided. She also testified that the process of obtaining grievance forms in segregation is the same as other housing units—an inmate in segregation is required to request

grievance forms from the gallery officer.

### C. Other Evidence

The letters Jones referenced in his testimony were attached to his response and/or the Complaint. The August 18 letter to Counselor Quick requesting grievance forms includes her handwritten response "ok on list to receive one." In the August 25 letter to Counselor Quick, Jones states he still needs three grievance forms and that he has a September 12 deadline on a grievance issue regarding the Pinckneyville assault. In the August 25 letter to Warden Lawrence, Jones conveys his belief that he has been subjected to retaliation because he was unable to obtain grievance forms or library services. He states he has a "looming" deadline to file "certain grievance issues," and "I trust you'll provide me guidance on these issues, as soon as possible." In the August 26 letter to the ARB, Jones seeks "guidance" on several issues including the fact that he has been unable to obtain grievance forms despite two written requests to his counselor.

Although not mentioned in his testimony, attached to the Complaint is letter dated October 20, 2019, which was sent to Warden Lawrence and states that since filing grievance #162-8-19 Jones has been unable to receive services in the facility including a denial of access to grievance forms and library services for cases and copying. He advises the Warden that he is self-imposing a denial of medical services, showers, and yard due to fear of retaliation for the content of Grievance #162-8-19. He states he needs access to copying services, cases, and notary services for access to the courts. He also seeks the Warden's "guidance" on his various issues.

## LEGAL STANDARDS

### A. *Summary Judgment and Exhaustion*

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. When a motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citing *Pavey*, 544 F.3d at 742).

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must occur before

the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

The Seventh Circuit requires strict adherence to the exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). However, an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" when prison officials fail to respond to a properly filed inmate grievance or when prison employees thwart a prisoner from exhausting. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

### B. Illinois Exhaustion Requirements

As an inmate in the Illinois Department of Corrections, Jones was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). The regulations first require an inmate to file his grievance with his counselor within 60 days of the discovery of an incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a). Administrative regulations require the grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the names of the individuals are unknown to the offender, he can still file the grievance but "must include as much descriptive information about the individual as possible." *Id.* The grievance form used by Jones also instructed that he was to "provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved."

(Doc. 79-2, pp. 21, 28, 33, 37, 41, 58). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

If the complaint is not resolved through the counselor, the grievance may be submitted to a grievance officer, who reports his or her findings and recommendations in writing to the CAO. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the ARB. 20 ILL. ADMIN. CODE §504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination. 20 ILL. ADMIN. CODE § 504.850(d), (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c).

## ANALYSIS

Having reviewed the parties' pleadings, the testimony, and other evidence of record, the Court concludes that Jones did not exhaust his administrative remedies on the claim in this case. The claim at issue occurred *after* the submission of Grievance #162-8-19.[3] Specifically, Jones alleges that Counselor Quick and Warden Lawrence refused to provide him with grievance forms as retaliation for the filing of that grievance. Jones first wrote to Counselor Quick to obtain grievance forms on August 18, 2019, and she replied "ok on list to receive one." He then wrote to Counselor Quick and Warden Lawrence one week later, on August 25, 2019, and notified them he had not received any grievance forms. It is at this point that they allegedly ignored his request for grievance forms in retaliation for the filing of Grievance #162-8-19. As such, he could not have written a grievance about the alleged retaliation until some reasonable point in time after August 25, 2019, when they had failed to respond. The issue, therefore, is whether he was able to obtain grievance forms *<u>after</u>* the alleged retaliation.

According to Jones, he only requested grievance forms from Counselor Quick and Warden Lawrence in 2019. He testified to his belief that he only had to request grievance forms three times to be able to file suit. He counts the letters to Counselor Quick and Warden Lawrence on August 25, 2019, along with his letter to the ARB on August 26, 2019, as his three "requests."[4] Those letters, however, could not relate to the retaliation

---

[3] Because the claim in this case arose after the filing of Grievance #162-8-19, the Court does not address whether that grievance was exhausted.
[4] He also testified that he was counting the statement he made on Grievance #162-8-19, which is confusing considering the grievance was submitted before the alleged retaliation.

claim in this case as it *did not exist at that time.* Instead, it is clear from the letters he was seeking to file grievances with a stated deadline of September 12, 2019, for the alleged assault at Pinckneyville and related circumstances. When asked if he attempted to obtain grievance forms from Counselor Quick when she visited his cell on September 5, October 3, November 5, or December 4, 2019, Jones indicated he did not because it was outside the timeframe to file a grievance on the Pinckneyville assault.

There is no evidence that Jones made any attempt to obtain a grievance form to grieve the issue of the alleged retaliation by Counselor Quick and Warden Lawrence. He did not request grievance forms from Counselor Quick at any time after August 25, 2019. In the letter to Warden Lawrence on October 20, 2019, Jones did not request grievance forms, nor would it be reasonable to request grievance forms from the Warden instead of a counselor or from an officer in the segregation unit (or any other housing unit).

Grievance Officer Pierce testified that grievance forms are available in the housing units, including the segregation unit. The Orientation Manual sets forth the proper steps for filing a grievance and advises inmates that "[g]rievance forms are available in all housing units upon request." Jones admits he received an Orientation Manual shortly after his arrival at Menard. He could have obtained the necessary forms from other individuals, such as correctional officers, sergeants, or lieutenants, in the housing unit. The Court does not credit Jones's testimony that it is "asinine" to believe that prison staff would be willing to bring him grievance forms to file against their co-workers. He received revised grievance forms from a correctional officer when he requested them in January 2020, which he held and used to file grievances for incidents in March 2020 and

July 2020.

Further, Jones's failure to file a grievance for the retaliation claim in this lawsuit based on a belief that the grievance forms at Menard were invalid is insufficient to absolve him of his responsibility to exhaust his claims in accordance with grievance procedures. Grievance #162-8-19 was not refused because the form was invalid. The counselor, grievance officer, and CAO responded to the grievance—none of them mentioned anything about the form. Instead, his grievance was considered on the merits. There is no legal support for Jones's belief that an outdated form is invalid or that a revised form "supersedes" prior versions of the form in this context such that the form becomes inexhaustible.

The availability of administrative remedies is not a subjective inquiry dependent on the knowledge of the prisoner in question. *Nichols v. Walker*, No. 08-cv-0388-DRH, 2010 WL 55676, at *8-9) (rejecting prisoner's argument that administrative remedies were unavailable because of his lack of knowledge of grievance procedures where the grievance procedures, specificity requirements, and deadlines were all available in the Illinois Administrative Code); *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007)(holding that a prisoner's alleged lack of knowledge of grievance procedures does not excuse noncompliance with available administrative remedies). The PLRA "says nothing about a prisoner's subjective beliefs, logical or otherwise, about administrative remedies that might be available to him." *Twitty*, 226 F. App'x at 596 (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000).

Further, "[w]hen the prisoner causes the unavailability of the grievance process by

simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Koba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006). As noted above, "[g]rievance procedures are unavailable to prisoners where *affirmative misconduct* prevents prisoners from pursuing administrative remedies." *Hernandez*, 814 F.3d at 842 (internal quotation marks and citations omitted) (emphasis added). Jones cannot choose not to avail himself of the grievance process and then argue that the process was made unavailable to him. *Koba,* 458 F.3d at 684. There is no futility exception to the exhaustion requirement. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). No one can *know* whether administrative requests will be futile; the only way to find out is to try. *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 536-37 (7th Cir. 1999) (citing *Greene v. Meese,* 875 F.2d 639, 641 (7th Cir.1989) (rejecting an argument for the creation of a "futility exception" to the common law administrative-exhaustion regime that applied to federal prisoners before the enactment of § 1997e). Exhaustion is required even if the prisoner believes his efforts in securing relief will be futile, *Booth v. Churner,* 532 U.S. 731, 741 n. 6 (2001).

For these reasons, the Court finds that Jones failed to exhaust his administrative remedies for the retaliation claim against Defendants Quick and Lawrence and, thus, this action must be dismissed.

## Conclusion

Defendants' Motion for Summary Judgment on the Issue of Failure to Exhaust Administrative Remedies (Doc. 58) is **GRANTED**, and this entire action is **DISMISSED**

**without prejudice** for Jones's failure to exhaust his administrative remedies.[5]

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

If Jones wishes to appeal the dismissal of this case, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Jones does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 8 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). He must list each of the issues he intends to appeal in the notice of appeal. *See* FED. R. APP. P. 24(a)(1)(C). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

DATED:  February 25, 2021

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[5] "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).